# STATE OF MICHIGAN

# COURT OF APPEALS

THEODORE CADWELL and GLENN QUAKER,

      Plaintiffs-Appellees,

v

CITY OF HIGHLAND PARK,

      Defendant-Appellant.

UNPUBLISHED
May 28, 2015

No. 318430
Wayne Circuit Court
LC No. 10-012583-NO

Before: TALBOT, C.J., and CAVANAGH and METER, JJ.

TALBOT, C.J. (*concurring in part and dissenting in part*).

I concur with the majority's opinion as it relates to the claims arising from the trial held in this matter. Specifically, I agree that the City was not entitled to a directed verdict or JNOV at trial, that the City's arguments with regard to future lost wages are meritless, and that no evidence supported the jury's award of damages for emotional distress. I also agree that, as it pertains to Quaker, the trial court correctly denied the City's motion for summary disposition. However, I respectfully dissent from the majority's opinion to the extent it holds that, at the summary disposition phase, a question of fact existed regarding whether Cadwell engaged in a protected activity under the WPA.

In their brief on appeal, plaintiffs largely argue that the trial court's summary disposition ruling was correct because testimony elicited at the subsequent trial demonstrated that Cadwell participated in a protected activity under the WPA. The obvious flaw in this argument is that this testimony was not, and could not, have been part of the record before the trial court at the time the motion was decided. The trial testimony cannot be considered by this Court when reviewing the trial court's decision at the summary disposition phase. See *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999) (a "reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion.").

The only other evidence suggested by plaintiffs as creating a question of fact regarding whether Cadwell engaged in a protected activity is an interrogatory response. Plaintiffs asked the City to "[i]dentify all individuals whom were involved in the arrest of the Mayor's son, *as alleged in the Complaint*," and to provide their contact information. The City responded by listing Cadwell, among others. Fairly read, this question did not ask the City to admit to who was actually present at the arrest, but rather, to name and provide information for those alleged

-1-

by plaintiffs to have been involved in the arrest. Moreover, the relevant activity is not the arrest itself, but forwarding the case against Gregory to the Wayne County Prosecutor. Nothing in the interrogatory response suggests that Cadwell was involved in this activity.

I disagree with the majority's reliance on Cadwell's deposition testimony as evidence that Cadwell was actually involved in forwarding the case to the Wayne County Prosecutor. As is detailed by the majority, Jones was adamant that she acted alone in forwarding the case for prosecution. In his deposition, Cadwell discussed a meeting with the Mayor. Present at this meeting were the Mayor, Cadwell, Quaker, Jones, and Herbert Fluker, an investigating officer. Cadwell testified that the Mayor expressed his disappointment that "we" forwarded the case on for prosecution. In my opinion, these statements by the Mayor do not create a genuine factual dispute regarding whether Cadwell was involved with forwarding the case for prosecution. At best, this testimony might suggest that the Mayor believed or assumed Cadwell, Quaker, Jones, and Fluker were all involved in forwarding the case for prosecution. However, it does not contradict Jones's testimony that Cadwell did not do so. Moreover, earlier in his deposition, Cadwell essentially admitted that he was *not* involved in forwarding the case to the prosecutor:

> *Q*. Was Mr. Gregory Yopp subsequently prosecuted by the Wayne County Prosecutor?
>
> *A*. Yes, sir, he was.
>
> *Q*. Do you know what the charges were?
>
> *A*. *Now, that was, actually*, the Officer in Charge of the case was – who is now the Deputy Chief, *Lanesha Jones*. I know that the Domestic Violence charge was not prosecuted, but I believe the Narcotics and Weapons charges were.

The trial court simply assumed that because Cadwell was the Chief of Police, he must have had some involvement in forwarding the case to the prosecutor. This assumption was refuted by Jones, and I find nothing in the record before the Court at the summary disposition phase to contradict her testimony. Accordingly, I would conclude that the trial court erred when it denied the City's motion for summary disposition with respect to Cadwell's WPA claim.

I note, however, that Cadwell did have a second claim against the City, a claim sounding in quasi-contract, which also proceeded to trial. The basis of this claim appears to be that there existed an implied contract between the City and Cadwell, under which it was agreed that Cadwell would continue to accrue seniority while he held an administrative position. Thus, under this implied agreement, Cadwell could not have been laid off because he would have been the second-most senior officer in the department after his demotion. While the jury found in Cadwell's favor with regard to this claim, the trial court did not award any damages to Cadwell, believing that the jury's verdict "adequately compensated" him for his lost wages. Under Cadwell's quasi-contract theory, he was deprived of his employment as an officer. Thus, he would be entitled to lost wages at the rate of an officer, not as Chief of Police. However, there is no evidentiary record of what his salary would have been as an officer. Accordingly, I would reverse the trial court's order to the extent it denied the City's motion for summary disposition

with respect to Cadwell's WPA claim and remand the case to the trial court for a determination of Cadwell's damages under his quasi-contract theory.

/s/ Michael J. Talbot